# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JUDITH SAMUELS,

          Plaintiff,

v.

WE'VE ONLY JUST BEGUN WEDDING
CHAPEL, INC. d/b/a Little White Chapel;
CHAROLETTE RICHARDS, an individual;
and DOES 1 through 50, inclusive,

          Defendants.

Case No. 2:13-cv-00923-APG-PAL

**ORDER ON MOTION FOR SUMMARY
JUDGMENT**

(Dkt. #57)

      Plaintiff Judith Samuels was employed as a bookkeeper at We've Only Just Begun Wedding Chapel ("WOJB") before being discharged by owner Charolette Richards. Ms. Samuels, who is Jewish, claims that she suffered discrimination and a hostile work environment because of her religious beliefs and practices. I previously dismissed one of Ms. Samuels' claims and remanded five others to the state court. (Dkt. #37 at 7.) Her remaining claims against WOJB and Ms. Richards assert (1) religious discrimination under Title VII of the Civil Rights Act ("Title VII") and Nevada law; (2) religious discrimination based on a failure to accommodate under Title VII and Nevada law; (3) harassment/hostile work environment; and (4) intentional infliction of emotional distress. Defendants now seek summary judgment on all of these claims. Defendants also request that I dismiss Ms. Richards from this lawsuit, arguing that there are no valid claims asserted against her.

      There are genuine disputes as to whether WOJB discriminated against Ms. Samuels when they terminated her and whether they failed to accommodate her religious practices. But the defendants are entitled to summary judgment on Ms. Samuels' discrimination claims based on her salary and her claims of harassment/hostile work environment and intentional infliction of emotional distress. Ms. Samuels has offered no evidence that religion was a factor in her salary. Further, no reasonable jury could find that a hostile work environment existed or that the defendants' conduct was extreme or outrageous or constituted harassment. Finally, Title VII does not permit claims against individuals, so Ms. Richards is entitled to judgment on the Title VII

1   claims.  However, Ms. Samuels also brought religious discrimination claims against Ms. Richards

2   based on Nevada law.  The defendants do not address the Nevada law aspects of these claims in

3   their summary judgment motion and therefore, as explained below, I deny summary judgment for

4   Ms. Richards as to the remaining Nevada law claims against her.

5   **I.    BACKGROUND**

6          WOJB operates the Little White Wedding Chapel, which provides wedding ceremonies to

7   its customers.  Ms. Richards is the president and owner of WOJB.  WOJB employed Ms. Samuels

8   as a part-time bookkeeper between December 2010 and April 2011.  Ms. Samuels was first placed

9   at WOJB by a temporary agency in September 2010. (Dkt. #57-1 at 9; Dkt. #58-1 at 12.)  She

10  worked part-time at WOJB, receiving approximately $13-$15 per hour from the temporary

11  agency for this work. (Dkt. #57-1 at 9, 11.)  In December 2010, Ms. Samuels accepted a position

12  with WOJB as a part-time bookkeeper for a salary of $18 per hour. (*Id.* at 19.)

13         Ms. Samuels is Jewish and observes the Jewish holidays.  Ms. Samuels states that while

14  employed by WOJB: (1) Ms. Richards conducted prayer sessions at the end of staff meetings that

15  made her uncomfortable, (2) she felt compelled to attend one after-work prayer service, (3) Ms.

16  Richards sang Christian songs to her both at work and over the telephone, and (4) that Ms.

17  Richards does not deny once telling her, "You know the Jews killed our Savior." (Dkt. #57-1 at

18  31-37; Dkt. #58-1 at 63-64.)  Ms. Samuels further alleges that she believes she was paid less than

19  prior bookkeepers because of her religion. (Dkt. #10 at 4.)  Neither Ms. Samuels nor Ms.

20  Richards is sure when Ms. Richards learned that Ms. Samuels was Jewish, but at the latest Ms.

21  Richards would have been aware of this fact in March 2011 when Ms. Samuels asked for time off

22  to celebrate the Passover holiday. (Dkt. #57-1 at 14-15.)  The defendants contend that Ms.

23  Samuels was never required to attend any prayer services and Ms. Richards' singing of Christian

24  songs in the office was not directed at Ms. Samuels specifically. (Dkt. #57-1 at 31-35.)

25         Ms. Richards initially approved Ms. Samuels' request to take off April 18 and 19 to

26  celebrate Passover with her family. (*Id.* at 14-15.)  Around that same time, Ms. Samuels also

27

28                                      Page 2 of 15

1   asked for an advance on her salary to travel to a family member's bar mitzvah. (*Id*. at 16-17.) Ms.

2   Richards also granted this request. (*Id*.)  On the evening of April 18, on the first night of Passover

3   and after Ms. Samuels had taken the day off, Ms. Richards terminated Ms. Samuels via a text

4   message which read:

5          "Judy I did not want to call you as I know this is a special time for you.

6          However if I allow you to take off for a special holiday I would have to

7          allow everyone that works here to take off for special holidays.  That is

8          stated in our handbook and as you have explained to people you have stated

9          during here (sic) orientation .ZAlong (sic) with the fact I had to search for a

10         long while to find some of the insurance papers for the limos[.] Guess where

11         I finally found some of them? In a file folder named miscellaneous .ZI (sic)

12         will have your check ready Wednesday Charolette."[1]

13  (*Id*. at 73-76.)

14         Ms. Richards says that Ms. Samuels was never discriminated against and that Ms.

15  Samuels' religion had nothing to do with her termination.  Rather, she says that there were several

16  reasons why Ms. Samuels was terminated and all relate to her poor work performance, including

17  that she had failed to keep a clean work area, manipulated WOJB's payroll system, and that she

18  had failed to maintain its ATM machine. (Dkt. #57 at 28-29; Dkt. # 57-1 at 25-26; 28-29.)

19  According to Ms. Richards, the concerns she had with Ms. Samuels' performance came to a head

20  over the Passover holiday when it was discovered that certain of WOJB's vehicles did not have

21  their proper proof of insurance information which resulted in a WOJB driver being ticketed. (Dkt.

22  #57 at 32; Dkt. #57-1 at 28-29.)

23         Ms. Richards does not remember if she ever discussed with Ms. Samuels any of her poor

24  work habits prior to Ms. Samuels' termination. (Dkt. #58-1 at 52.) Ms. Samuels states Ms.

25  Richards never spoke to her about any concerns about her performance. (Dkt. #58-1 at 13.) Ms.

26  _____

27  [1] The substance of the text is reproduced as it was given in the exhibits.  Any grammatical errors
    are from the original. (Dkt. #57-1 at 73-76.)

28

1   Samuels also contends that many of the performance issues the defendants complain of are events

2   for which she was not responsible.  For example, she states that she was not responsible for

3   loading the ATM machine the day it was improperly maintained and that Ms. Richards' grandson,

4   not Ms. Samuels, had been delegated the responsibility of placing the proof of insurance in

5   WOJB's vehicles. (Dkt. #58-1 at 25-26; 32-33.)

6   ## II.   ANALYSIS

7           Summary judgment is appropriate when the pleadings, discovery responses, and affidavits

8   "show there is no genuine issue as to any material fact and that the movant is entitled to judgment

9   as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P.

10  56(c)).  For summary judgment purposes, the court views all facts and draws all inferences in the

11  light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*,

12  793 F.2d 1100, 1103 (9th Cir. 1986).

13          If the moving party demonstrates the absence of any genuine issue of material fact, the

14  burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine

15  issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at

16  323.  The nonmoving party "must do more than simply show that there is some metaphysical

17  doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal

18  citations omitted).  She "must produce specific evidence, through affidavits or admissible

19  discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could

20  find in her favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477

21  U.S. at 248–49.

22          ### A.   Religious discrimination

23

24          Ms. Samuels' Seventh Cause of Action asserts a religious discrimination claim against the

25  defendants under Title VII and Nevada Revised Statutes § 613.310, *et seq*., alleging that she was

26  both paid less and terminated because of her religion. (Dkt. #10 at 16-17.)  The defendants argue

27  that Ms. Samuels was terminated for legitimate, non-discriminatory reasons related to her poor

28

1   work performance.  They further argue that the events which Ms. Samuels cites to as allegedly

2   discriminatory do not support a claim for religious discrimination.  Specifically, they argue that

3   they never required or demanded that Ms. Samuels attend any prayer services and that Ms.

4   Richards' singing of Christian songs was not specifically directed at Ms. Samuels.  Finally, they

5   argue that Ms. Samuels has not put forth any evidence: (1) that previous bookkeepers were paid

6   more than her, (2) about the religion of those bookkeepers, or (3) that any difference in pay was

7   based on religion.

8        In response, Ms. Samuels argues that Ms. Richards' text informing her of her termination,

9   directly references her request to take time off for Passover.  Further, she argues that all of the

10  defendants' non-religious reasons for terminating her were manufactured after the fact and

11  conflict with the reason given in Ms. Richards' text.

12       Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to

13  discriminate against any individual with respect to his compensation, terms, conditions, or

14  privileges of employment" because of religion. 42 U.S.C. § 2000e–2(a)(1).  N.R.S. §

15  613.330(1)(a) makes the same conduct unlawful under state law.  Claims for unlawful

16  discrimination under § 613.330 are analyzed under the same principles applied to similar Title

17  VII claims. *See Apeceche v. White Pine Co.*, 615 P.2d 975, 977-78 (Nev. 1980) (comparing §

18  613.330 to section 703(a)(1) of Title VII of the Civil Rights Act of 1964 and analyzing § 613.330

19  according to federal precedent); *see also Wilson v. Greater Las Vegas Ass'n of Realtors*, No.

20  2:14-CV-00362-APG-NJK, 2015 WL 1014365, at *4 (D. Nev. Mar. 9, 2015).  Accordingly, I will

21  address Ms. Samuels' state and federal claims of religious discrimination based on a protected

22  class together.

23       To prevail on a Title VII discrimination claim based on a protected class, the plaintiff

24  must establish a prima facie case by presenting evidence that "gives rise to an inference of

25  unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 3148 (9th Cir. 1997);

26  *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  A plaintiff can establish

27  a prima facie case through direct evidence or through circumstantial evidence via the burden

28                                    Page 5 of 15

1  shifting framework set forth in *McDonnell Douglas*. *See Metoyer v. Chassman*, 504 F.3d 919, 931

2  (9th Cir. 2007).[2]

3      Religious discrimination occurs if the plaintiff's religion was a "motivating factor for any

4  employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–

5  2(m).  "[A] single discriminatory comment by a plaintiff's supervisor or decisionmaker is

6  sufficient to preclude summary judgment for the employer" in a Title VII discrimination case.

7  *Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005); *see also Coghlan*

8  *v. Am. Seafoods Co. LLC*, 413 F .3d 1090, 1094-95 (9th Cir. 2005); *Godwin v. Hunt Wesson, Inc.*,

9  150 F.3d 1217, 1221 (9th Cir. 1998) ("When the plaintiff offers direct evidence of discriminatory

10  motive, a triable issue as to the actual motivation of the employer is created even if the evidence

11  is not substantial.").

12      Here, there is direct evidence of discrimination.  In cases where direct evidence of

13  discriminatory animus is present, the *McDonnel Douglass* framework requiring a prima facie

14  showing of discrimination is inapplicable.[3] *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111,

15  121 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct

16  evidence of discrimination.").  For example, in *Nguyen v. Qualcomm, Inc.*, the plaintiff's sworn

17

18  _____

19  [2] Neither party cites to the appropriate standard for analysis of a discrimination claim based on a protected class.  The defendants have cited the standard used to analyze a discrimination claim based on a failure to accommodate.  While Ms. Samuels has also brought a separate claim for failing to accommodate

20  her religious practices, this particular Title VII claim is based on the allegation that Ms. Samuels was paid less and terminated because she is Jewish.  Therefore, she is claiming discrimination based on a protected

21  class.

22  [3] When there is an absence of direct evidence, the plaintiff carries the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802.  The plaintiff must show that (1) she belongs to a

23  protected class; (2) she was qualified for her position and performed her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected

24  class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Hawn v. Executive Mgmt, Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

25  If the plaintiff establishes her prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id*. at

26  1155 (internal quotation marks and citation omitted).  If the employer meets its burden, then the plaintiff must prove that the employer's proffered reasons for the termination are mere pretext for unlawful

27  discrimination. *Id*.

28

declaration alleged that her supervisor made discriminatory comments such as: "You are a Vietnamese woman, you have to listen to me.  Don't complain [sic] anything, just come to work and finish your project." 501 F. App'x 691, 693–94 (9th Cir. 2012).  The Ninth Circuit held that testimony constituted direct evidence of discriminatory animus and created "a genuine issue of material fact on whether Nguyen's gender and Vietnamese national origin were motivating factors in her termination." *Id*. (citations omitted).

Making all inferences in Ms. Samuels' favor, she has submitted evidence creating a triable issue as to whether her religion was a motivating factor for her termination.  Ms. Samuels was informed of her termination through a text message from Ms. Richards which states, in part, "Judy I did not want to call you as I know this is a special time for you.  However if I allow you to take off for a special holiday I would have to allow everyone that works here to take off for special holidays." (Dkt. #57-1 at 73-74.)  Defendants point to the rest of the text which makes reference to the misplaced vehicle insurance as proof that the reason for the termination was non-discriminatory. (*Id*. at 74-76.)  However, the latter part of the message does not negate the former. In addition to the text message, viewing the facts and making all inferences in Ms. Samuels' favor, Ms. Richards often sang religious songs to Ms. Samuels, Ms. Richards conducted prayer services at work that Ms. Samuels felt required to attend, and Ms. Richards does not deny telling Ms. Samuels, "You know the Jews killed our Savior." (Dkt. #58-1 at 34-36; 64.)[4]  While the defendants dispute Ms. Samuels' characterization of Ms. Richards' workplace singing, whether Ms. Samuels was required to attend prayer services, and whether Ms. Richards ever made the statement attributed to her, I must view the facts in the light most favorable to Ms. Samuels. These circumstances, coupled with the substance of the text telling Ms. Samuels she was terminated, create an issue of fact as to whether Ms. Samuels was terminated, in part, because she

---

[4] Ms. Samuels also alleges that Ms. Richards looked for horns on Ms. Samuels' head while curling her hair.  However, the evidence does not support this.  At her deposition, Ms. Samuels stated that it "kind of felt like" Ms. Richards was "looking at my head looking for my horns." (Dkt. #61-1 at 19.)  There is no evidence Ms. Richards actually did that or made any statement to that effect.

1   is Jewish.

2   As to the allegation that Ms. Samuels was paid less because she was Jewish, Ms. Samuels

3   has failed to provide any evidence that the defendants knew she was Jewish at the time she was

4   hired and her salary was set.  She also has not provided evidence of the religion of previous

5   bookkeepers she believes were paid more or evidence that any difference in pay was based on

6   religion.  Therefore, her claim for religious discrimination based on her salary fails.

7   I therefore grant partial summary judgment to the defendants on the Seventh Cause of

8   Action to the extent it is based on Ms. Samuels' salary.  However, because there are triable issues

9   as to whether Ms. Samuels was terminated, at least in part, because of a protected characteristic, I

10   deny summary judgment on the portion of the Seventh Cause of Action that is based on her

11   termination.  Ms. Samuels may proceed with her Seventh Cause of Action against WOJB

12   asserting liability under both Title VII and Nevada law based on her termination.  As explained

13   below, she may proceed with her Seventh Cause of Action against Ms. Richards asserting liability

14   only under Nevada law based on her termination.

15   **B.    Religious discrimination – failure to accommodate**

16   Ms. Samuels' Ninth Cause of Action asserts a religious discrimination claim against the

17   defendants under Title VII and Nevada law based on a "failure to accommodate" theory, alleging

18   that the defendants failed to reasonably accommodate her religious practices and beliefs. (Dkt.

19   #10 at 18-19.)  Ms. Samuels has not stated under which Nevada law she asserts this claim, nor

20   have the defendants argued for summary judgment on Ms. Samuels' claim under Nevada law.

21   Therefore, I review the defendants' motion for summary judgment only as to Ms. Samuels' Title

22   VII claim for failure to accommodate.

23   As noted above, Title VII makes it an unlawful employment practice for an employer "to

24   discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e–

25   2(a)(1).  Title VII defines "religion" to include "all aspects of religious observance and practice,

26   as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate

27

28   Page 8 of 15

1   to an employee's or prospective employee's religious observance or practice without undue

2   hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

3        Claims for failure to accommodate are analyzed using a two-part framework. *Heller v.*

4   *EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).  First, Ms. Samuels must establish a prima

5   facie case by proving that: (1) she had a bona fide religious belief, the practice of which

6   conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and

7   (3) the employer threatened her or subjected her to discriminatory treatment, including discharge,

8   because of her inability to fulfill the job requirements. *See id.*  If the employee proves a prima

9   facie case of discrimination, the burden shifts to the employer to show either that it initiated good

10  faith efforts to reasonably accommodate the employee's religious practices or that it could not

11  reasonably accommodate the employee without undue hardship. *See Tiano v. Dillard Dep't.*

12  *Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

13       As described above, and viewing the evidence in the light most favorable to Ms. Samuels,

14  Ms. Samuels has demonstrated a prima facie case: she asked for time off to celebrate Passover

15  and was terminated as a result.  The defendants respond that Ms. Samuels received days off for

16  Passover and therefore her religious practices were reasonably accommodated.  But they

17  subsequently terminated her on the first night of the holiday.  A reasonable jury could find that

18  Ms. Samuels' request for days off for Passover influenced the decision to terminate her.  The

19  circumstances of Ms. Samuels' termination create an issue of fact as to whether the defendants

20  made reasonable efforts to accommodate her religious practices.  As a result, the defendants'

21  motion for summary judgment on this claim is denied.  Ms. Samuels may proceed with her Ninth

22  Cause of Action against WOJB asserting liability under both Title VII and Nevada law based on

23  her "failure to accommodate" theory.  However, as explained below, she may proceed with her

24  Ninth Cause of Action against Ms. Richards asserting liability only under Nevada law.

25  ////

26  ////

27  ////

28                          Page 9 of 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    Harassment/hostile work environment based on religion

Ms. Samuels does not specify under which law she is seeking relief for her Eighth Cause of Action, which asserts harassment/hostile work environment.  In their motion, the defendants cite Title VII legal standards and precedent. (Dkt. #57 at 10-11.)  In her opposition Ms. Samuels adopts the Title VII legal standard and offers no other legal basis for this claim. (Dkt. #58 at 8-9.)  Therefore, I presume that Ms. Samuels asserts this claim based on Title VII liability only.

Under Title VII, to prevail on a hostile work environment claim based on religion, Ms. Samuels must show that: (1) she was subject to verbal or physical conduct of a harassing nature that was based on her religion; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive work environment. *See Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002); *Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1167 (D. Nev. 2009).  Defendants allege that the environment at the chapel was not sufficiently severe or pervasive to alter the conditions of her employment or create an abusive working environment.  Viewing the facts in a light most favorable to Ms. Samuels, I agree.

To determine whether conduct was sufficiently severe or pervasive, I consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).  "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).

Here, Ms. Samuels has failed to establish that the alleged conduct by the defendants, even if true, would create an environment that is sufficiently severe or pervasive to create an abusive working environment.  Ms. Samuels complains that defendants conducted prayer sessions at the end of staff meetings that made her uncomfortable, that she felt compelled to attend one prayer service held after work, that Ms. Richards sang Christian songs at her, that she once felt as though

Ms. Richards was looking for horns when Ms. Richards curled Ms. Samuels' hair, and that Ms. Richards does not deny saying to her, "You know the Jews killed our Savior." (Dkt. #58-1 at 34-37; 63-64.) Ms. Samuels offers no evidence of physically threatening or humiliating conduct by the defendants. She also fails to explain how these actions or comments altered the conditions of her employment or how they unreasonably interfered with her work performance. Ms. Samuels argues that her eventual termination is evidence that the conditions of her employment were altered because of the hostile work environment, but she cites no authority for this. Even taking into account Ms. Samuels's termination, the conduct she alleges is not severe or offensive enough to sustain a claim for harassment/hostile work environment under Title VII.

Ms. Samuels has failed to establish by admissible evidence frequent or severe discriminatory conduct and has failed to show how it unreasonably interfered with her workplace performance. Therefore, I grant the defendant's motion for summary judgment on this claim.

**D.     Intentional Infliction of Emotional Distress**

In support of her Tenth Cause of action asserting a claim for intentional infliction of emotional distress ("IIED"), Ms. Samuels relies on the same set of facts as she does to support her religious discrimination and harassment/hostile work environment claims. To prove a claim of IIED in Nevada, Ms. Samuels must show: (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intentionally or recklessly caused the emotional distress; (3) she actually suffered severe or extreme emotional distress; and (4) the defendants' conduct actually or proximately caused her suffering. *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981); *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983).

A discriminatory termination, by itself, does not constitute extreme and outrageous conduct. *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) ("[T]ermination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct actionable under an intentional infliction of emotional distress theory."). Only where an employer's treatment of an employee "go[es] beyond all possible bounds of

1    decency, is atrocious[,] and utterly intolerable" will the defendant be liable. *Id.* at 911.

2    Occasionally treating another person in an inconsiderate, unkind, or rude manner is not enough to

3    support a claim for IIED. *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998) (per

4    curiam) (quotation omitted); *Schneider v. TRW, Inc.*, 938 F.2d 986, 992–93 (9th Cir. 1991)

5    (affirming summary judgment against plaintiff's IIED claim where her supervisor "screamed and

6    yelled in the process of criticizing her performance, threatened to throw her out of the department

7    and made gestures she interpreted as threatening"). Nor is conduct extreme and outrageous

8    merely because a person knows the other person will "regard the conduct as insulting, or will

9    have h[er] feelings hurt." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

10         Ms. Samuels has not presented a triable issue as to whether the defendants engaged in

11    extreme and outrageous conduct. Ms. Samuels has cited evidence that she felt compelled to

12    participate in a prayer service, that Ms. Richards sung Christian songs to her, that Ms. Richards

13    does not deny telling her, "You know the Jews killed our Savior," and that Ms. Samuels was

14    terminated on Passover after receiving permission to take the holiday off.[5] (Dkt. #58-1 at 34-37;

15    63-64.) Even if all this is true, viewing the evidence in the light most favorable to Ms. Samuels

16    and drawing all reasonable inferences in her favor, this behavior does not rise to the level of

17    extreme and outrageous conduct. *See, e.g., Hirschhorn v. Sizzler Restaurants Int'l, Inc.,* 913 F.

18    Supp. 1393, 1401 (D. Nev. 1995) (termination and derogatory comments not enough to constitute

19    extreme and outrageous conduct).

20         The cases cited by Ms. Samuels are inapposite. Those cases involved conduct more far

21    egregious than what Ms. Samuels alleges here. *See e.g., Russo v. Clearwire US, LLC*, No. 2:12-

22    CV-01831-PMP-VCF, 2013 WL 1855753 (D. Nev. April 30, 2013) (alleging employer

23    discouraged the plaintiff, who was legally blind, from applying for new management positions

24

---------------

25         [5] As discussed above, Ms. Samuels' allegations that the defendants paid her less than non-Jewish
bookkeepers and that Ms. Richards looked for horns on Ms. Samuels' head are not supported by the

26    evidence in the record. *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991) (The nonmoving
party "must produce specific evidence, through affidavits or admissible discovery material, to show" a

27    sufficient evidentiary basis on which a reasonable fact finder could find in her favor.)

28                        Page 12 of 15

because of his disability, refused him the equipment and software needed to do his job, and moved him to a building with lighting which made it impossible for him to see); *Dannenbring v. Wynn Las Vegas, LLC*, No. 2:12-CV-00007-JCM-VCF, 2012 WL 3317500 (D. Nev. Aug. 13, 2012) (alleging employer refused to allow pregnant employee to switch shifts in order to avoid cigarette smoke, fired her one month before her maternity leave, and retaliated against the employee when she sought unemployment benefits). The one case cited by Ms. Samuels in which the court denied defendants' summary judgment motion on an IIED claim addressed a situation where the employer engaged in far more outrageous conduct than Ms. Samuels alleges happened in this case. In *Dillard Dep't Stores, Inc. v. Beckwith*, evidence showed that the defendant admitted to the plaintiff that she was demoted because of her worker's compensation claim, that upon demotion the plaintiff was placed in a department where it would be difficult for her to make daily sales quotas, that she was ridiculed by younger employees, and that the plaintiff's complaints about her harmful work environment were ignored. 115 Nev. 372, 378, 384 (1999).

Here, the defendants' conduct was potentially wrongful, but it was not beyond all possible bounds of decency. I therefore grant summary judgment in defendants' favor on Ms. Samuels' IIED claim.

### E.   Defendant Charolette Richards

The defendants argue that Title VII liability is limited to employers and does not extend to individual supervisors, corporate officers, or shareholders. Ms. Samuels concedes that the Ninth Circuit has ruled that Title VII does not extend to individual supervisors, but she argues that other circuits have applied a more liberal construction.

Civil liability under Title VII is limited to employers. 42 U.S.C. § 2000e–5(g). *Miller v. Maxwell's Int. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993).[6]  Therefore, I grant summary judgment on

---

[6] Even if I were inclined to entertain other circuits' standards for Title VII liability, Ms. Samuels misstates the case law she cites from the Fifth Circuit, which held individual defendants liable only in their official capacities and not in their individual capacities. *See, e.g., Garcia v. Elf Atochem N. Am.*, 28 F.3d

Ms. Samuels' Seventh and Ninth Causes of Action asserting Title VII liability against Charolette Richards in her individual capacity. I do not, however, dismiss Ms. Richards from the lawsuit entirely. In addition to her Title VII claims, Ms. Samuels also asserts religious discrimination claims against Ms. Richards based on Nevada law. The defendants do not address these Nevada law claims in their summary judgment motion. I therefore deny the defendants' motion to have Ms. Richards dismissed from this case entirely because I have no basis on which to grant summary judgment on the remaining state law claims against her.

III.   **CONCLUSION**

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(Dkt. #57) is GRANTED in part and DENIED in part** as follows:

1.  Summary judgment is granted as to the Eighth Cause of Action claiming harassment/hostile work environment and the Tenth Cause of Action claiming intentional infliction of emotional distress.

2.  Summary judgment is granted as to the Seventh Cause of Action for religious discrimination based on Ms. Samuels' salary. Summary judgment is also granted as to the Title VII claims against Charolette Richards individually, as asserted in the Seventh and Ninth Causes of Action. Summary judgment is denied as to all other claims. Ms. Samuels may proceed with her Seventh Cause of Action against WOJB asserting liability under both Title VII and Nevada law based on her termination. She may proceed with her Ninth Cause of Action against WOJB asserting both Title VII and Nevada law claims. She may proceed with her Seventh Cause of Action against Ms. Richards asserting liability only under

/ / / /

446, fn. 2 (5th Cir. 1994) *abrogated by Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ("[W]e construe [the plaintiff's] suit to be against [the defendants] in their official capacity since Title VII liability does not attach to individuals acting in their individual capacity.").

1    Nevada law based on her termination.  And she may proceed with her Ninth Cause

2    of Action against Ms. Richards asserting liability only under Nevada law.

3    DATED this 15th day December, 2015.

4

5    _____

6    ANDREW P. GORDON
     UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          Page 15 of 15